McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
One Hovchild Plaza
4000 Route 66
Tinton Falls, New Jersey 07753
(732) 733-6200
Attorneys for Plaintiff,
Principal Life Insurance Company

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY, | : Civil Action No.: |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NATALIA PESIN, | : |
| | : |
| Defendant. | : |

## CIVIL ACTION – COMPLAINT ON BEHALF OF
## PRINCIPAL LIFE INSURANCE COMPANY

Principal Life Insurance Company ("Principal Life"), by and through its attorneys McElroy, Deutsch, Mulvaney & Carpenter, LLP, by way of Complaint against the defendant Natalia Pesin ("Pesin") alleges and says:

### INTRODUCTION

1. At all relevant times, Principal Life is an insurance company organized and existing under the laws of the State of Iowa, with its principal place of business located at 711 High Street, Des Moines, Iowa 50392-0410.

2. Principal Life brings this action against Pesin to have a policy of disability income

insurance issued to Pesin declared null and void and rescinded, *ab initio*, because Pesin knowingly and intentionally made material misstatements and omissions in executing the application forms.

## PARTIES

3. Principal Life is, and during all times relevant has been, in the business of underwriting policies of disability income insurance and is authorized to transact the business of insurance in the State of New York.

4. Pesin is a resident of the State of New York, maintaining a primary residence and domicile located at 216 Grasmere Drive, Staten Island, New York.

## JURISDICTION AND VENUE

5. This Court possesses subject matter jurisdiction based upon diversity of citizenship of the within parties pursuant to 28 U.S.C. § 1332.

6. Principal Life is a citizen of the State of Iowa within the meaning and intent of 28 U.S.C. § 1332.

7. Pesin is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

8. There is complete diversity of citizenship between the parties to this action pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs of suit.

9. Venue in the United States District Court for the Eastern District of New York is proper, because the acts giving rise to the controversy took place in New York within the meaning and intent of 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Application For And Issuance Of The Policy Of Disability Income Insurance

10.     On December 14, 2009, Pesin completed and executed an application ("Application"), Parts A and C, seeking the issuance of a policy of disability income insurance bearing policy no. 7721156 (the "Disability Policy").  The Application is fully incorporated by reference as if same were set forth at length herein.

11.     In executing the Application, Pesin knew that she was required to provide complete, truthful, accurate and honest answers to the questions present on the Application, including medical history, physical condition, diagnosis, prognosis, treatment and earned income.

12.     In executing the Application, Pesin knew that Principal Life would rely upon the answers recorded thereon in determining whether Pesin was insurable and otherwise qualified for the policy of disability income insurance applied for by Pesin.

13.     In executing the Application, Pesin knew that she may be subject to civil and criminal penalties in the event she knowingly made any false or misleading statements in order to obtain the policy of disability income insurance.

14.     At the time Pesin executed the Application seeking the issuance of the Disability Policy, she was a licensed insurance provider, who for years was engaged in selling life and long-term care insurance, annuities, and other Prudential products, and, was licensed as a registered representative authorized to solicit the sale of securities. At all relevant times, Pesin was intimately knowledgeable and sophisticated with respect to insurance matters and knew that her medical history and health conditions, including her earned income, were highly material to the underwriters of Principal Life when underwriting the Disability Policy she applied for.

3

15.     In executing Part A of the Application, Pesin applied for maximum disability income benefits of $6,650 per month for the first 90 days following the 90-day elimination period, and thereafter, a maximum benefit of $5,075 per month, together with residual disability benefits, cost of living adjustment benefit at 3%, transitional occupational benefit period, update and future increase benefits.

16.     In executing Part A of the Application seeking the issuance of the Disability Policy, Pesin was asked the following question:

> 5.     Other Disability Insurance
>
>> a.     Do you have, are you applying for, or will you become eligible for in the next three years (based on a qualifying period of employment), any other Disability, Insurance?

17.     Pesin represented "No" to Question 5a, Part A of the Application.

18.     In completing Question 6, Part A of the Application seeking the issuance of the Policy, Pesin represented her current YTD "Earned Income as shown on Federal Income Tax Return" to be ▮▮▮▮ for 2009, and ▮▮▮▮ for 2008 and 2007, respectively.

19.     In executing Part A of the Application seeking the issuance of the Disability Policy, Pesin was asked the following question:



20.     Pesin represented ▮▮▮ to Question ▮▮, Part A of the Application.

21.     On December 11, 2009, Pesin completed Part B of the Application seeking the issuance of the Disability Policy.  The Application, Part B is fully incorporated by reference as if same were set forth at length herein.

22.     In completing Question 7, Part B of the Application seeking the issuance of the Disability Policy, Pesin represented that her primary occupation was "insurance agent," and her employer was "Prudential Financial."

23.     In completing Part B of the Application seeking the issuance the Disability Policy, Pesin was asked the following question and provided the following response regarding her



* * *

24.     In response to Question ■, Part B, Pesin identified her

25.     Question ■ Part B of the Application requested the following information to which Pesin provided the following response:



26.     Question ■ Part B of the Application requested the following information to which Pesin provided the following response:

5



27.     Question ▋, Part B of the Application requested the following information to which Pesin provided the following response:



28.     Having answered ▋ to ▋and ▋, in the details section, Pesin represented that she consulted ▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋

29.     On December 14, 2009, Pesin completed and executed Part C of the Application, thereby specifically agreeing as follows:

> **AGREEMENT: Statements In Application(s):** I represent that all statements in this application(s) are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in this application(s), including all of its parts, and statements by the Proposed Insured in any medical questionnaire(s) that becomes a part of this application(s), will be the basis of any insurance issued. I understand that material misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

> **When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(s) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are

met, the policy is deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no licensed agent, broker, representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application(s) and on any medical questionnaire(s) that becomes a part of this application(s) may not be waived. Subject to the Time Limit on Certain Defenses provision in the policy, no knowledge of any fact on the part of any licensed agent, broker, or representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application(s).

30.     By signing the Application, Pesin specifically acknowledged as follows:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

31.     To facilitate the underwriting of the Disability Policy, Pesin submitted documents purporting to be profit and loss statements for the year ending November 30, 2009 which represented that she had a net income of ▮▮▮▮▮.

32.     On January 27, 2010, Pesin executed Part D of the Application which provides:

**AGREEMENT: Statements In Application(s):**
I have read all the questions and answers obtained during the telephone application interview. This includes Part B of the Proposed Insured. I represent that all statements are true and complete and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgement of Delivery included with my policy. I understand that material misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Insurance Effective:**
I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in

7

this application(s), medical questionnaire(s), or amendment(s) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:**
I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application(s) and on any medical questionnaire(s) that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**Insurability Dates:**
If a premium deposit or another form acceptable to the Company was submitted with Part A and C of the application, I verify that the information in Part B of the application truly reflects the Proposed Insured's health or insurability as of 12/11/2009, the date the telephone application interview was completed. I further verify that the answers in Part A and B of the application are true and correct as of the date hereof, and there has been no change in the Proposed Insured's health or insurability as of the date I sign Part D of this application.   No change in insurability will be taken into consideration between the Start Date and Stop Date as defined in the Conditional Receipt.

If the application was submitted on a C.O.D. (no premium deposit) basis, I verify that the information in Part A and B of the application truly reflects the Proposed Insured's health or insurability as of the date I sign Part D of this application.

Any person who knowingly and with intent to defraud any insurance company or other person who on application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each violation.

33.    On January 27, 2010, Pesin executed an Amendment and Acceptance Form, acknowledging and accepting the following terms, provisions or amendments to the Disability

Policy.   By executing the Amendment and Acceptance Form, Pesin thereby specifically represented and acknowledged:

- I have reviewed the Application (including any medical questionnaire) and this Amendment and Acceptance Form.

- To the best of my knowledge and belief, all statements in the Application, as amended, are true and complete as of the date I am signing this Amendment and Acceptance Form.

- Since the date the Application was signed, there has been no change in the Insured's health or any other information in the Application, except as specifically stated on this Amendment and Acceptance Form.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

34.     By executing the Amendment and Acceptance Form, Pesin agreed and accepted the following terms:

- With $6,650 monthly amount of Income Benefit
- With Adaptable Income Benefit from day 91 to day 180
- With Benefit Update Rider
- With $5,075 monthly Amount of Disability Benefit
- With 90 Days elimination period.
- With Future Benefit Increase Rider
- With application Part A amended to show question: 5 – Yes, short term group coverage with Prudential for 25 weeks of benefits – no replacing; and long term group coverage with Prudential, 50% of monthly eligible earning – is not replacing this coverage

35.     On January 27, 2010, when Pesin executed the Amendment and Acceptance Form, Pesin did not amend her answers to Questions ███████████████████, nor did she amend her answers to Questions 7███████████████████.

9

36.     Based on Pesin's statements and representations contained in the Application, Parts A, B, C and D, and the Amendment and Acceptance Form, and relying upon Pesin's complete answers, candor, honesty and openness in disclosing relevant information on the Application, Principal Life issued Pesin a policy of disability income insurance bearing policy no. 7721156, with an issue date of January 25, 2010.

37.     The Disability Policy was delivered to Pesin on January 27, 2010 at which time Pesin paid the initial premium to Principal Life and the Policy went into effect.

38.     The Disability Policy in the section entitled **THE CONTRACT** provides:

> **ENTIRE CONTRACT**
> The policy, the attached applications, and any attached riders or endorsements make up the entire contract.
>
> **TIME LIMIT ON CERTAIN DEFENSES**
> In issuing the coverage(s) under this policy and any attached riders, We have relied on the statements and representations on the application. We have the right to void the coverage(s) due to a material misstatement or omission in the application. However, after two years from the effective date of coverage(s), no material misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an application will be used to void the coverage(s) or deny a claim for Disability which starts after the expiration of such two-year period.
>                              *  *  *
> **FRAUD**
> Upon a judicial decision in a civil or criminal court that You and/or the Owner have committed fraud in obtaining this policy or the filing of a claim under this policy, We may void this policy.

39.     The front cover of the Disability Policy provides the following notice:

> **Important Notice.** Please review the copy of the application attached to this policy. The application is part of the policy. The policy was issued on the basis that the answers to all the questions and the information shown on the application are correct and complete. Material misstatements or omissions on the application could void the

policy.

## Term Life Insurance Policy No. 4653395

40.     On the next day, January 28, 2010, and in furtherance of her plan to defraud Principal Life, Pesin completed and executed an application for term life insurance ("Life Application"), Parts A and C, seeking the issuance of a policy of term life insurance bearing policy no. 4653395 providing $2,000,000.00 death benefit (the "Life Policy").   The Life Application is fully incorporated by reference as if same were fully set forth at length herein.

41.     In executing the Life Application, Pesin knew that she was required to provide complete, truthful, accurate and honest answers to the questions present on the Life Application, including medical history, physical condition, diagnosis, prognosis and treatment.

42.     In executing the Life Application, Pesin knew that Principal Life would rely upon the answers recorded thereon in determining whether Pesin was insurable and otherwise qualified for the Life Policy applied for by Pesin.

43.     In executing the Life Application, Pesin knew that she may be subject to civil and criminal penalties in the event she knowingly made any false or misleading statements in order to obtain the Life Policy.

44.     Pesin submitted Part B of the Application for the Disability Policy, dated December 11, 2009, as part of her Life Application.

45.     On February 8, 2010, Pesin executed a Financial Underwriting Supplement for life insurance wherein, in addition to net worth, she represented her annual salary to be, ███████ for 2009 and ███████ for 2008.

46.     On March 12, 2010, Pesin executed a Supplemental Statement in which she

answered ███████████████████████████████████████████████████

████████████████████████████████████████████████

47.    On May 4, 2010, Pesin executed Part D of the Life Application which provides:

**Statements In Application:**
I have read all the questions and answers obtained during the application process, including Part B on the primary Proposed Insured. I represent all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree the statements in the application, including all of its parts and statements by the Proposed Insured in any medical questionnaire or supplement, will be the basis for and form a part of the policy. I understand that material misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Policy Coverage Becomes Effective:**
I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable. Except as may be provided by the Conditional Receipt, I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:
1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and
2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application, medical questionnaire, or amendment that becomes a part of this application; and
3) This form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

* * *

**Limitation of Authority:**
I understand and agree no licensed agent, broker, representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application and on any medical questionnaire that becomes a part of this application

12

> may not be waived. No knowledge of any fact on the part of any licensed agent, broker, representative, telephone interview, medical examiner or other person shall be considered knowledge of the Company unless such fact is stated in the application.
>
> * * *
>
> **Insurability Dates:**
> If a premium deposit was submitted with Part A and C of the application, I verify that all information in Part B of the application is true and complete and is correctly recorded as of 12/11/2009. If the application was submitted without a premium deposit (C.O.D.), I verify that all information in the Part A and Part B of the application including all parts and statements by the Proposed Insured in any medical questionnaire or supplement accurately reflects the Proposed Insured's health and insurability as of the date I sign this form.

48.     On May 4, 2010, Pesin executed an Amendment to Application certifying that the statements and answers in the Life Application continue to be, without change, true and complete as of the date of the Amendment.   Pesin specifically acknowledged:

> This Amendment is part of the application. Except as modified above, this Amendment is subject to all agreements contained in the application. The application and this Amendment are to be taken as a whole and are to be considered as the basis for and as a part of the policy. To the best of my knowledge and belief, in all other respects, the statements and answers in the application continue to be, without change, true and complete as of the date of the Amendment.

49.     On the basis of the representations made in the Life Application, Principal Life issued the Life Policy with a death benefit $2,000,000.00 and a waiver of premium benefit.

50.     Had Pesin made an accurate, complete and truthful disclosure of her health and medical condition when applying for the Life Policy, Principal Life would have discovered the fraud and rescinded the Disability Policy.

51.     On January 4, 2016, Pesin executed a Disability Claim Notice seeking disability benefits. On the Disability Claim Notice, Pesin represented that she was disabled as of September

14, 2015, and that her disability was due to ▮▮▮▮▮▮▮▮

52.    During the course of Principal Life's investigation, Principal Life demanded Pesin provide a copy of her 2009 federal income tax return in order to verify her representations of earned income contained in her Application.  Pesin refused to provide her federal income tax return and otherwise failed to cooperate with Principal Life's investigation.

53.    During the course of Principal Life's review and evaluation of Pesin's medical disability claim, Principal Life discovered, for the first time, that the representations and statements made on Pesin's  Application for the Disability Policy were materially false, that Pesin knowingly failed and omitted to disclose material facts, and otherwise knowingly failed to accurately, honestly and/or truthfully answer and disclose material information in response to the questions present on the Application which, if disclosed, Principal Life would have declined to issue the Disability Policy to her.

54.    Specifically, and by way of illustration only, Pesin knowingly and intentionally made material misstatements of fact, failed, refused and/or omitted to disclose material facts and otherwise failed to correctly answer and disclose the following:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮





55.     The representations and statements contained in Pesin's Application which were acknowledged and accepted as true and complete by Pesin were incomplete, inaccurate and false.

56.     By letter dated August 8, 2016, Principal Life advised Pesin that it formally declared the rescission, *ab initio*, the policy of disability income insurance bearing policy no. 7721156 and issued a check in the amount of $ 51,691.35, representing the return of all premiums theretofore paid plus interest.

## FIRST COUNT

57.     Principal Life repeats and realleges the allegations contained in paragraphs 1 through 56 inclusive, as if the same were fully set forth at length herein.

58.     As is set forth more fully in the preceding paragraphs, Pesin knowingly and intentionally misrepresented, concealed, and/or failed to disclose her complete medical history, her consultations with physicians, the diagnostic tests she underwent, the medical treatment she was advised to have, the medication she had been or currently was taking when she completed the Application seeking the issuance of the Disability Policy.

59.     As is set forth more fully in the preceding paragraphs, Pesin knowingly and intentionally made material misstatements of fact in response to the questions present on the

Application and Life Application, and otherwise failed, refused and/or omitted to disclose material facts, all of which is aforesaid.

60.     Pesin made false material representations of presently existing or past facts when she completed the Application seeking the issuance of the Disability Policy with the intent that they be relied upon.

61.     Principal Life relied on the false material representations of Pesin and issued the Disability Policy bearing policy no. 7721156.

62.     Principal Life has no adequate remedy at law and therefore seeks relief, i.e., that the Disability Policy bearing policy no.7721156 be declared null and void and rescinded, *ab initio*.

**WHEREFORE**, Principal Life demands judgment against defendant for relief more particularly described as follows:

A)     An order declaring and adjudging the policy of disability income insurance policy no. 7721156 to be null and void and rescinded, *ab initio*; and

B)     An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief the court deems equitable and just.

**SECOND COUNT**

63.     Principal Life repeats and realleges the allegations contained in paragraphs 1 through 62 inclusive, as if the same were fully set forth at length herein.

64.     Pesin knowingly, negligently and/or innocently made material misstatements of fact; failed to disclose material facts in response to the questions presented on the Application; and otherwise failed, refused and/or omitted to disclose material facts, all of which as aforesaid.

17

65.     Principal Life has no adequate remedy at law, and therefore seeks that the Disability Policy be declared null and void and rescinded, *ab initio.*

**WHEREFORE**, Principal Life demands judgment against Pesin for relief more particularly described as follows:

(a)     an order declaring and adjudging the Disability Policy bearing policy no. 7721156 to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief the Court deems equitable and just.

**THIRD COUNT**

66.     Principal Life repeats and realleges the allegations contained in paragraphs 1 through 65 inclusive, as if the same were fully set forth at length herein.

67.     Principal Life issued the Disability Policy pursuant to, and in accordance with, a mistake of fact, all of which as aforesaid.

68.     Principal Life has no adequate remedy at law, and therefore seeks that the Disability Policy be declared null and void and rescinded, *ab initio.*

**WHEREFORE**, Principal Life demands judgment against Pesin for relief more particularly described as follows:

(a)     an order declaring and adjudging the Disability Policy bearing policy no. 7721156 to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief the Court deems equitable and just.

**FOURTH COUNT**

18

69.     Principal Life repeats and realleges the allegations contained in paragraphs 1 through 68 inclusive, as if the same were fully set forth at length herein.

70.     Annexed to the Disability Policy was Part C of the Application executed by Pesin on December 14, 2009, which provides, in material part:

> 3.  When Insurance Effective:
>     I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application(s) has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application(s), medical questionnaire(s), or amendment(s) that becomes a part of this application(s); and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is singed by me and the Proposed insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

71.     The section of the Disability Policy entitled THE CONTRACT provides:

> ENTIRE CONTRACT. The policy, the attached applications, and any attached riders or endorsements make up the entire contract.

72.     On the date the Disability Policy was delivered and accepted and the first premium paid, Pesin was not in the state of health and insurability represented in the Applications.

73.     Pesin failed to satisfy the conditions precedent for coverage to be effective under the Disability Policy.

74.     Principal Life has no adequate remedy at law, and therefore seeks that the terms and provisions of the Disability Policy pertaining to the conditions precedent to the effectiveness of coverage be specifically enforced.

**WHEREFORE**, Principal Life demands judgment against the Pesin for relief more

19

particularly described as follows:

(a)   an order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Disability Policy bearing policy no. 7721156; and

(b)   an order declaring and adjudging that the Disability Policy bearing policy no. 7721156 was and is not effective, and null and void and of no force and effect; and

(c)   an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## FIFTH COUNT

75.   Principal Life repeats and realleges the allegations contained in paragraphs 1 through 74 inclusive, as if the same were fully set forth at length herein.

76.   Pesin was at all times relevant to the execution and submission of the Application seeking the issuance of the Disability Policy under a duty of honesty, good faith and fair dealing to immediately and forthwith advise Principal Life of any material change in Pesin's insurability from that represented in the Application which may occur any time prior to the issuance, delivery and acceptance of the Disability Policy and payment of the first premium.

77.   Pesin intentionally, willfully, and/or negligently failed, refused and/or neglected to disclose, inform or otherwise advise Principal Life that Pesin's insurability materially changed from that represented on the Application prior to the issuance, delivery and acceptance of the Disability Policy and payment of the first premium.

78.   Had Pesin not intentionally, willfully, and/or negligently failed, refused and/or neglected to disclose, inform or otherwise advise Principal Life that Pesin's insurability materially

changed to obtain the Disability Policy, she would not have been able to obtain the Disability Policy.

79.     As a direct and proximate result of Pesin's breach of the duties of honesty, good faith and fair dealing, Principal Life issued the Disability Policy and has otherwise sustained damages.

80.     Principal Life has no adequate remedy at law, and therefore, seeks that the Disability Policy be declared null and void and rescinded, *ab initio*.

81.     In the alternative, Principal Life has no adequate remedy at law, and therefore seeks that the terms and provisions of the Disability Policy pertaining to the conditions precedent to the effectiveness of coverage be specifically enforced.

**WHEREFORE**, Principal Life demands judgment against Pesin for relief more particularly described as follows:

(a)     an order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Disability Policy bearing policy no. 7721156; and

(b)     an order declaring and adjudging that the Disability Policy was and is not effective given the material change in Pesin's insurability from that represented and stated in the Application thereby rendering the Disability Policy bearing policy no. 7721156 null and void and of no force and effect; and

(c)     an order declaring and adjudging the Disability Policy bearing policy no. 7721156 to be null and void and rescinded, *ab initio*; and

(d)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

Dated:  August 10 2016

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for Plaintiff,
Principal Life Insurance Company

By: _____
         Steven P. Del Mauro, Esq.

*3144919*

22